IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-877-AMG |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Michael Ford ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 8, 9), and the parties have fully briefed the issues. (Docs. 11, 20).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 14, 15). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.   **Procedural History**

Plaintiff filed an application for DIB on December 30, 2019, and alleges an amended disability onset date of December 1, 2019. (AR, at 21, 96-97). The SSA denied the application initially and on reconsideration. (*Id*. at 96-105, 108-118). Two administrative hearings were held, on March 16, 2021, and October 7, 2021. (*Id*. at 41-95). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 17-40). The Appeals Council denied Plaintiff's request for review. (*Id*. at 1-7). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.   **The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2019, the amended alleged onset date. (AR, at 21, 23). At Step Two, the ALJ found that Plaintiff had the following severe physical impairments: "right eye visual acuity loss, left eye blindness, hypertension, hyperlipidemia, and Type II diabetes mellitus with no ocular complications (20 CFR 404.1520(c))." (*Id*. at 23). At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.) The ALJ then determined that Plaintiff had the RFC

> to perform "medium work," as defined in 20 CFR 404.1567(c), except that the claimant can only: occasionally crouch and climb ramps and stairs; never climb ropes, ladders, and scaffolds; frequently balance, stoop, kneel, and crawl; must avoid exposure to temperatures over 80 degrees Fahrenheit and under 60 degrees Fahrenheit; must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, and the operation of any kind of moving vehicle, equipment, and apparatus; occasionally read

>    small print and transverse uneven terrain; cannot perform work requiring more than occasional near visual acuity, far visual acuity, depth perception, accommodation, and field of vision; due to visual limitations, cannot tolerate work traditionally known or classified as "fast pace," "production pace" type work; and would not have a reduction in production (including error rate) of more than 10% less than that of the average employee.

(*Id*. at 25). At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id*. at 33). Finally, at Step Five, the ALJ concluded that, "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as a bundle clerk/laundry sorter, janitor, or linen room attendant. (*Id*. at 34). Thus, the ALJ found that Plaintiff had not been under a disability since December 1, 2019. (*Id*. at 35).

**III.   Claims Presented for Judicial Review**

On appeal, Plaintiff raises one issue – that "the ALJ erred in his consideration of the medical opinion of Dr. Sam Dahr, [Plaintiff's] treating ophthalmologist," by improperly rejecting portions of Dr. Dahr's opinion and by failing to analyze one of Dr. Dahr's proposed functional limitations. (Doc. 11, at 3-4). Because of this, Plaintiff argues that "the ALJ committed harmful error requiring remand." (*Id*. at 4).

In response, the Commissioner argues that "the ALJ properly found Dr. Dahr's opinion only somewhat persuasive, using appropriate factors such as consistency, supportability, specialization, and treatment relationship with Plaintiff." (Doc. 20, at 11). Because of this, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (*Id*. at 12).

**IV.     The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521; *see also id*. §§ 404.1502(a), 404.1513(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

4

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**V.      The ALJ Adequately Considered Dr. Dahr's Medical Opinion.**

Under the applicable regulations,[3] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ considers those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id*. § 404.1520c(a), (c)(1)-(5). Supportability and consistency are the most important factors. *Id*. § 404.1520c(b)(2). "Supportability"

---

[3] The regulations governing the agency's evaluation of medical evidence were revised effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017).

6

examines how closely connected a medical opinion is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id*. § 404.1520c(c)(1).  "Consistency," on the other hand, compares a medical opinion to the other evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 404.1520c(c)(2).

The ALJ must articulate how persuasive he finds a medical opinion. *Id*. § 404.1520c(b).  In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. § 404.1520c(b)(2).[4]  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

Plaintiff claims that that the ALJ improperly considered the May 14, 2021, medical opinion by Dr. Dahr.  As to this opinion, the ALJ found:

---

[4] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record.  *See* 20 C.F.R. § 404.1520c(b)(2), (3).

7

> Dr. Sam Dahr, an Ophthalmologist, and [Plaintiff's] own medical source completed a Medical Source Statement on [Plaintiff] on May 14, 2021 (Exh. 12F). The doctor determined that [Plaintiff] had minimal limitations in climbing stairs, ramps, ladders or scaffolds due to limited depth perception and limited visual field (Exh. 12F/4). The doctor determined that [Plaintiff] was not able to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar or approaching people or vehicles due to limited field of vision. The doctor further determined that [Plaintiff] had the ability to read very small print, read ordinary newspaper or book print, view a computer screen and he could probably determine the differences in shape and color of small objects such as screws, nuts or bolts. The doctor indicated that [Plaintiff] had one eye which had suffered a partial retinal stroke (Exh. 12F/4). Dr. Dahr further determined that [Plaintiff] had environmental limitations in that he was not to work around unprotected heights or moving mechanical parts due to his lack of depth perception (Exh. 12F/5).
>
> The undersigned finds this opinion **somewhat supported and somewhat consistent** with the record and therefore, find this opinion **somewhat persuasive** because the medical evidence of records showed that during an appointment with [Plaintiff] on April 7, 2021, it was noted that since his last visit there had been no changes (Exh. 14F/5). His visual acuity in his right eye was 20/25-2 and in his left eye he had light perception (Exh. 14F/5). Dr. Dahr noted that [Plaintiff's] exam and Fluorescein Angiography (FA) were stable (Exh. 14F/6). It was also noted that the neovascular glaucoma in his left eye was stable (Exh. 14F/6).
>
> However, the doctor's opinion was **inconsistent** with other evidence in the record, such as a consultative examination completed on June 11, 2021, where Dr. Abraham indicated that [Plaintiff] was able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles (Exh. 13F/9). Furthermore, his opinion was **inconsistent** with Dr. Amusa, an Internist, who testified that [Plaintiff] would be able to avoid hazards. Dr. Amusa further testified that [Plaintiff] would be able to read ordinary book print or newspaper but not continuously throughout the day. She further testified that [Plaintiff] would be able to see a computer screen and differentiate between small screws, nuts, bolts and colors. Additionally, Dr. Amusa testified that [Plaintiff] could sustain an eight-hour day and a 40-hour workweek. **This evidence does not support some of the doctor's limitations; therefore, the undersigned finds that the overall opinion of Dr. Dahr is somewhat persuasive.**

(AR, at 30) (emphasis added).

The ALJ articulated that he found Dr. Dahr's medical opinion to be "somewhat persuasive." (*Id*.) He expressly considered the supportability and consistency factors. In discussing consistency, the ALJ noted that he found Dr. Dahr's medical opinion "somewhat consistent" with some medical evidence in the record but "inconsistent" with other medical evidence in the record, including Dr. Amusa's testimony and Dr. Abraham's June 11, 2021, consultative examination. (*Id*.) In discussing supportability, the ALJ explained that he found Dr. Dahr's medical opinion to be "somewhat supported" by Dr. Dahr's own treatment records. (*Id*.)

Plaintiff argues that the ALJ impermissibly "rejected Dr. Dahr's opinion that [Plaintiff] cannot avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles." (Doc. 11, at 7). Plaintiff further argues that "Dr. Dahr is [Plaintiff's] treating ophthalmologist, and is a specialist in this area," whereas "Dr. Abraham and Dr. Amusa are both internists, neither of whom specialize in ophthalmology," and therefore the ALJ erred by "utiliz[ing] two inferior medical opinions to override that of a physician with a treating relationship who has performed numerous eye exams on [Plaintiff] throughout the record, and who is a specialist." (*Id*. at 7-8) (citation omitted). But as the Plaintiff concedes, "the Regulations . . . no longer give deference to a treating physician, and while they list the treatment relationship and doctor's specialization as factors to consider, they do not require the ALJ to even discuss those factors when analyzing a medical opinion." (*Id*. at 8) (citing 20 C.F.R. § 404.1520c).

As the Commissioner argues, and the undersigned agrees, "the ALJ's decision shows that he based his RFC assessment on an evaluation of the record as a whole,

including the medical opinions in the record, the prior administrative findings of state agency medical consultants, the examination findings in the record" – including the examination findings of Dr. Dahr – "and Plaintiff's daily living activities." (Doc. 20, at 6; *see* AR, at 30-32).  The ALJ met the requirements of the regulations in evaluating Dr. Dahr's medical opinion and that evaluation is supported by substantial evidence.  Plaintiff's request that the Court find otherwise is nothing more than a request to reweigh the evidence, and this Court must decline that request.  *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform.").  "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*.  Accordingly, the Commissioner's decision should be affirmed.

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 18th day of September, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE